Gary R. BANKS, Appellee,

v.

KOEHRING COMPANY and Farm
Division and/or Fox Tractor
Division thereof, Appellant.

No. 75–1733.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1976.

Decided June 16, 1976.

Ross H. Sidney, Des Moines, Iowa, for appellant.

Lex Hawkins, Des Moines, Iowa, for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and MEREDITH, Chief District Judge.[*]

GIBSON, Chief Judge.

The plaintiff, Gary R. Banks, brought this diversity action against the defendant, Koehring Company (Koehring), the manufacturer of a forage harvester and corn head attachment that injured the plaintiff in a farm accident. Koehring appeals from a judgment in the amount of $150,000 entered upon a jury verdict on plaintiff's claims of negligence and strict liability in tort under Iowa law. On this appeal, Koehring contends that the District Court[1] erred (1) in submitting to the jury the plaintiff's claims of negligence and strict liability and Koehring's respective affirmative defenses of contributory negligence and assumption of risk; and (2) in refusing to enter judgment n. o. v. for the defendant, or alternatively a new trial, on the grounds that the verdict is contrary to the jury instructions and not supported by substantial evidence. We affirm.

The evidence, viewed, as we must, in a light most favorable to the prevailing party, *Illinois Central R.R. v. Stufflebean,* 270 F.2d 801, 805 (8th Cir. 1959), reveals that on August 28, 1971, the plaintiff, in his field near Seymour, Iowa, was harvesting sorghum with a Model 3000 Forage Harvester attached to the rear of a Model 2CA Corn Head, both supplied by Koehring, a Wisconsin corporation. The plaintiff had used the harvester earlier in the summer, but had just purchased the corn head to be used with it for harvesting sorghum and other row crops into silage for himself and others.[2]

On the day of the accident, the plaintiff, an experienced farmer, age 32, was testing the combined corn head and harvester for the first time. He had read the instruction manuals for both machines the previous day and carried them with him. However, when he commenced harvesting, he immediately encountered a problem that is commonly experienced with such equipment, the machines clogged. To alleviate the problem, as he had done in the past on similar machines, the plaintiff engaged a reversing mechanism, using a control accessible from his tractor seat, to dislodge the material,[3] but was not successful. He then

---

[*] The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

[1.] The Honorable Roy L. Stephenson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

[2.] Koehring's design contemplates that the two machines, with a tractor, will harvest row crops as follows: the leading edge of the corn head severs the stalk of the crop and gathers it by means of three rotating chains that in turn feed the crop, butt end first, through a hopper and out the rear of the corn head onto the conveyor belt at the front of the harvester. The crop then moves into a paddle roll that passes it into two feeder rolls. These feeder rolls compress and accelerate the crop toward a large rotating cutting wheel that chops it into small pieces for silage. The silage is then blown through the top of the harvester into an attached wagon.

[3.] The plaintiff had operated forage harvesters in the past. He grew up on his father's farm and was well trained. At trial, he and other witnesses testified that forage harvesters of this type share a universal problem of clogging with the crop being harvested. However, all those he had previously operated incorporated a reversing feature that was accessible from the driver's seat to clear out clogged crop material. The evidence showed, however, that the Koehring equipment used in the instant case was reversible only in part. The cutting and feeder rolls would reverse, with the conveyor

turned the machine off, dismounted, pulled out the jammed stalks by hand, restarted the machine, and repeated the process until it cleared.

After proceeding another ten feet, the machine again clogged. Plaintiff turned the machine off, repeated the cleaning process and made some adjustments as instructed in the manuals. After he travelled another ten feet a third clog developed. He repeated the cleaning process again and encountered the same problem a fourth and fifth time after travelling about ten feet. While clearing the clog the fourth time he also replaced some "shear bolts" on the feed rollers that were severed by other parts when the machine reversed. Again, however, after about ten feet a sixth clog developed.

Ultimately, having made all adjustments suggested in the manuals, the plaintiff reasoned that in order to discover the cause of the clogging, he would have to observe the machine while it was operating. Thus, he throttled down and applied the brakes to the tractor but left the power takeoff running to continue powering the harvester. He went back and looked into the hopper through a large opening in the top, but his view of the paddle roll was obscured by a clog of protruding sorghum stalks. Then, with his left arm he reached in to brush back the stalks, intending only to look inside, not to unclog or adjust the machine while it was running. Suddenly, the stalks began to feed and pulled his arm into the paddle roll, causing severe injuries eventually requiring amputation of his arm.

The plaintiff specified, *inter alia*, that Koehring's design was negligent (1) in failing to incorporate a device, operable from the driver's seat, to unclog the machine by *completely* reversing the harvesting mechanism, (2) in failing to provide a shield or cover over the hopper to prevent injury in the paddle roll, and (3) in providing too wide a gap between the corn head's gathering chains so as to cause undue accumulation and clogging. He further alleged that Koehring failed to test the equipment, to provide unclogging instructions, and to adequately warn the user of the product's dangers. Plaintiff also alleged that these unreasonable defects in the product rendered Koehring strictly liable in tort under Iowa law.

In ruling on a motion for directed verdict in this case under Fed.R.Civ.P. 50(a), the evidence must be viewed in a light most favorable to the nonmovant and he must be given the benefit of all legitimate inferences, *Little v. Watkins Motor Lines,* 256 F.2d 145, 148 (8th Cir. 1958), without assessing credibility. *Brady v. Southern Ry.,* 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239 (1943). The motion must be denied if reasonable minds might differ as to the conclusions of fact to be drawn. *Fort Dodge Hotel Co. v. Bartelt,* 119 F.2d 253, 257 (8th Cir. 1941). In considering a motion for judgment n. o. v. under Fed.R. Civ.P. 50(b), the same view of the evidence is taken, 5A J. Moore, *Federal Practice* ¶ 50.07[2], at 2355–56 (2d ed. 1975), and the verdict must be sustained if there is substantial evidence to support it. *Simpson v. Skelly Oil Co.,* 371 F.2d 563, 567 (8th Cir. 1967).

After carefully reviewing the record with these principles in mind, we believe the District Court properly submitted all issues to the jury and correctly refused to set the verdict aside. There was substantial evidence to support the plaintiff's claim that Koehring was negligent in failing to exercise reasonable care in design, *Bengford v. Carlem Corp.,* 156 N.W.2d 855, 864 (Iowa 1968); *Calkins v. Sandven,* 256 Iowa 682, 688, 129 N.W.2d 1, 5–7 (1964), and in failing to test the product for clogging, *cf. West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202, 212–13 (Iowa 1972), as well as failing to provide the buyer with "reasonable notice and *specific* direction as to proper use and all attendant risks which are forseeable to a manufacturer who possesses superior knowledge." *Buffington v. Amchem Products, Inc.,* 489 F.2d 1053, 1055 (8th Cir. 1974) (emphasis in original), *citing*

belt remaining in neutral, but the gathering chains would continue to move forward in a manner compounding rather than alleviating the clogging problem.

*Lakatosh v. Diamond Alkali Co.,* 208 N.W.2d 910, 913 (Iowa 1973). The defendant's engineer, Mr. Sousek, conceded that harvesting machines of this type generally provide complete reversal devices, or at least avoid internal countermovement, that Koehring did not thoroughly test the machines for clogging and that the instruction manuals did not discuss or offer suggestions for correcting the specific problem of clogging. Plaintiff's engineer, Dr. Wardle, testified that there was an unusually wide gap between the gathering chains of the corn head that aggravated clogging and that the machine continuously clogged when he observed it in a sorghum field. The jury was also permitted to view the equipment.

■ When a manufacturer offers a machine or equipment to the public for use in harvesting, the user is entitled to presume that the manufacturer has fully tested the mechanism, that it is operable for the purpose intended, harvesting row crops, and further, that it will not malfunction and become inoperative after every ten feet of normal use. While plaintiff was cognizant of the potential dangers in this type of equipment, in an attempt to make any productive use of it, he was forced to investigate it while its cutting mechanism was operating. We therefore, believe that the evidence of plaintiff's own contributory negligence was susceptible of differing interpretations so as to create a jury question. *Meade v. Roller,* 212 N.W.2d 426, 429 (Iowa 1973). In the plaintiff's prior experience, clogs were relieved by reversing the harvesting mechanism. He thus contends that he lacked experience with the particular hazard that caused his injury and that he followed the defendant's instructions and did not transgress any warnings.

■ Finally, we believe the record contains substantial evidence to support a jury finding that Koehring was strictly liable in tort for selling a product with a defect "not contemplated by the user * * * which would be unreasonably dangerous to him" in normal use. *Kleve v. General Motors Corp.,* 210 N.W.2d 568, 571 (Iowa 1973); *accord, Restatement (Second), of Torts* § 402A (1965). Plaintiff's engineer, Dr. Wardle, testified that at least four design defects in the equipment rendered it unreasonably dangerous in a manner not recognizable by the ordinary farmer. There was also sufficient contradiction in the evidence to generate a jury question on Koehring's contention that the plaintiff knew and assumed the risk by accepting "certain inherent dangers with full realization of the hazards involved," *Froman v. Perrin,* 213 N.W.2d 684, 689 (Iowa 1973); *accord, King v. Barrett,* 185 N.W.2d 210, 213 (Iowa 1971), so as to vitiate the defendant's strict liability. *Cooley v. Quick Supply Co.,* 221 N.W.2d 763, 765 (Iowa 1974). Although the evidence presented a rather close question on this issue,[4] it was properly considered by the jury and the District Court was correct in denying judgment for the defendant notwithstanding the verdict.

■ The defendant's final argument that the jury's verdict is fatally inconsistent with the court's instructions, to which the defendant did not object at trial, is, in our view, no more than a reiteration of the defendant's disagreement with the jury's view of the facts. Absent exceptional circumstances not present here, we assume that the jury understood and properly ap-

---

4. The plaintiff conceded that he was knowledgeable in the use of forage harvesters, had read the instruction manuals and understood the mechanics of the equipment and the many warnings posted in decals on the equipment. He had experienced clogging on similar equipment before and testified that he was aware of every hazard of the machine, and that when he was injured he was trying to guard against the very danger that injured him. Indeed, he conceded that the danger that injured him was apparent to him and that no additional warning could have told him anything he did not already know about it.

However, the plaintiff also contends that all machines he had used in the past incorporated complete reversing mechanisms operable from the driver's seat. Thus, he contends that he had no prior experience with the particular hazard that injured him and he had no idea that the stalks would pull his arm inside the machine. Therefore, he argued to the jury that he could not have appreciated and consciously assumed the risk.

plied the court's instructions. *Barnes v. Omark Industries, Inc.,* 369 F.2d 4, 11 (8th Cir. 1966).

The judgment of the District Court is affirmed.