Thomas TURPIN, Plaintiff-Appellee,

v.

Joseph MAILET et al.,
Defendants-Appellants.

No. 427, Docket 79–7562.

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1979.

Decided April 8, 1980.

Paul A. Scholder, New Haven, Conn. (Robert E. Reilly, Corp. Counsel, Charles H. Fischer, Jr., Asst. Corp. Counsel, West Haven, Conn., of counsel), for defendant-appellant, City of West Haven.

Michael Avery, Boston, Mass. (John R. Williams, Williams & Wise, New Haven, Conn., of counsel), for plaintiff-appellee.

Before MOORE and MANSFIELD, Circuit Judges, and PALMIERI, District Judge.*

MANSFIELD, Circuit Judge:

With the decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court permitted local governmental entities to be sued under 42 U.S.C. § 1983 for constitutional violations caused by acts committed pursuant to "official policy." This case raises the question of what type conduct on the part of municipal employees can constitute an "official policy" within the meaning of *Monell*. The City of West Haven appeals from a judgment of the United States District Court for the District of Connecticut entered by Judge Jon O. Newman after a jury trial, holding the City liable for causing plaintiff's unlawful arrest. The City contends that the district court erroneously instructed the jury as to the applicable standard of liability under *Monell* and that there was insufficient evidence to support a finding of an "official policy." We hold that the court correctly stated the applicable legal principles. However, we reverse because of the insufficiency of the evidence.

FACTS

During the early evening hours of September 18, 1971, two City of West Haven police officers, Christopher Columbus Skeens and Robert J. Weber, responded to a call involving an altercation between two teenage girls. As the girl alleged to be the "attacker" was being escorted to the police car a 15-year old teenage boy, Thomas Turpin, came to her rescue. According to Turpin's version of the ensuing moments, he was grabbed by Skeens and clubbed on the back of the head. The resulting laceration required six stitches. According to the officers, Skeens merely threw aside Turpin, who injured his head as he fell. Turpin was arrested and subsequently prosecuted for breach of the peace, though the Juvenile Court later declined to convict.

On December 10, 1971, Turpin filed a complaint with the City of West Haven Board of Police Commissioners requesting that the Board investigate the incident and take disciplinary action against Skeens. On June 13, 1972, however, Turpin withdrew that complaint and instead instituted a federal action against Skeens in the District of Connecticut, claiming that he had been unlawfully arrested, prosecuted and subjected to excessive force, all in violation of his civil rights under 42 U.S.C. § 1983. In a decision rendered February 20, 1975, Judge Newman, then of the district court, held that plaintiff's arrest and prosecution were constitutionally proper but that Skeens had used excessive force in effectuating the arrest. Turpin was awarded $3,500 in damages.

The decision of the district court was one of several issues taken up on April 8, 1975, at a regular meeting of the Board of Police Commissioners, which had received a letter from Skeen's attorney, hired by the City, to the effect that he thought Skeens was blameless and that the district judge's decision was erroneous. The Board declined to take any action against Skeens. Thereafter, the Board received a letter from plaintiff's father, dated April 9, 1975, and from plaintiff's attorney, dated May 1, 1975, criticizing the Board for failing to discipline Skeens.

The incident giving rise to the present lawsuit occurred on May 6, 1975, when City of West Haven police officer Joseph Mailet

* Of the United States District Court for the Southern District of New York, sitting by des-

arrested Turpin on a charge of disorderly conduct. Within a month the charge was nolle prossed by the assistant prosecuting attorney. On July 15, 1975, Officer Skeens was promoted to the Detective Bureau.

On July 25, 1975, Turpin, claiming that his arrest on May 6, 1975, violated his civil rights, commenced suit for damages against Officer Mailet under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) on the ground that Mailet acted with malice toward Turpin as a result of Turpin's successful suit against Skeens. The complaint also sought to hold the City of West Haven liable in damages under the Fourteenth Amendment on the ground that the City's failure to discipline Skeens had encouraged members of the West Haven Police Department to believe, in light of the widespread animosity generated against Turpin as a result of his lawsuit against Skeens, that they could violate Turpin's rights with impunity.

The district court dismissed the complaint against the City, holding that under the circumstances presented, a right of action could not be implied directly from the Fourteenth Amendment. In *Turpin v. Mailet*, 579 F.2d 152 (2d Cir. 1978) (en banc) ("*Turpin I*"), however, we disagreed and held that where unconstitutional actions of employees are "authorized, sanctioned or ratified by municipal officials or by bodies functioning at a policy making level," the municipality could be held liable for damages under the Fourteenth Amendment. 579 F.2d at 164–68. We further held that the allegations of Turpin's complaint—that the Board of Commissioners, aware that the growing animus toward Turpin presented a threat to his liberties, had by failing to discipline Skeens and indeed by promoting him knowingly encouraged the violation of his rights by the police—were sufficient to state a cause of action and remanded the case for a determination of the merits.

One day after our *Turpin I* decision the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that local governments

could be sued under 42 U.S.C. § 1983 for causing the invasion of constitutional rights. The Supreme Court then vacated our *Turpin I* decision, 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), instructing us to reconsider our prior ruling in light of the standards established by *Monell*. In view of Turpin's allegations, which met these standards, we reinstated our prior decision with instructions to the district court to permit plaintiff to proceed under § 1983. 591 F.2d 426 (2d Cir. 1979) (en banc) ("*Turpin II*").

The matter was then tried to a jury by District Judge Newman. One disputed issue was whether there was probable cause for Mailet to arrest Turpin on a charge of disorderly conduct. Mailet testified that Turpin was obstructing pedestrian traffic at the time of the arrest, which Turpin, supported by other witnesses, denied. Turpin testified that he was arrested simply because he questioned Mailet's order to "get going."

Plaintiff's theory at trial was that the City's failure to discipline Skeens, in light of the publicity given to the earlier lawsuit and the animosity generated among members of the police department by that lawsuit, encouraged Mailet to harass Turpin. In support of that theory, plaintiff introduced two newspaper articles, respectively dated April 9, 1975, and May 5, 1975, discussing the failure of the Board to discipline Skeens. As evidence of animosity on the part of police officers toward Turpin he showed that Mailet and others were aware of the lawsuit against Skeens, that when Mailet arrested him Mailet called him by name, and that when he was brought to the police station he was verbally harangued by some members of the department, including one officer who commented that Turpin's occupation was "hanging around corners and suing police officers." All of this was disputed by Mailet and the City.

As part of its defense that its decision not to discipline Skeens did not encourage harassment of Turpin, the City attempted to show that Turpin's withdrawal of the formal complaint against Skeens in 1972

barred a Board investigation of Skeens. However, on cross-examination the City's own witnesses testified that the Board had the right to institute disciplinary proceedings against an officer without a citizen complaint.

On April 5, 1979, the jury found the City and Mailet jointly liable for $800 in compensatory damages and the City liable for $8,000 in punitive damages. The City filed a motion for a judgment notwithstanding the verdict, which was denied by the district court on June 22, 1979. From the resulting judgment the City now appeals.

## DISCUSSION

In *Monell* the Supreme Court held that municipalities may be sued for damages under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. at 690–91, 98 S.Ct. at 2036. The plaintiffs in *Monell*, pregnant municipal employees, alleged that they had been required to take unpaid leaves of absence before such leaves were medically necessary. Because the action claimed to be unconstitutional in *Monell* was taken pursuant to an express official policy of municipal decisionmakers—it was embodied in the municipality's rules and regulations—the Court had no occasion to consider the type or quantum of evidence required to prove an implicit official policy that could be the basis of municipal liability. The Court, however, specifically rejected the doctrine of *respondeat superior* for such a § 1983 cause of action, stating that "a municipality cannot be held liable *solely* because it employs a tortfeasor." 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis in original).

At issue here is whether the action taken by the City of West Haven after the trial of Skeens constituted an "official policy" within the meaning of *Monell* and whether that policy caused Turpin to be subjected to a denial of his constitutional rights. This case is therefore unlike *Monell*, where the challenged official policy and conduct was embodied in a municipal regulation, leaving for the fact finder only the questions of whether the policy caused the injury to the plaintiff there and whether the municipality was entitled to some sort of qualified immunity, an issue left unanswered by *Monell*. See *Owen v. City of Independence, Mo.*, 589 F.2d 335 (8th Cir. 1978), *cert. granted*, 48 U.S.L.W. 3217 (1979);[1] *Sala v. County of Suffolk*, 604 F.2d 207 (2d Cir. 1979); *Bertot v. School District, No. 1, Albany County, Wyoming*, 613 F.2d 245 (10th Cir. 1979) (en banc); *Paxman v. Campbell*, 612 F.2d 848 (4th Cir. 1979) (en banc); *Huemmer v. Mayor and City Council of Ocean City*, 474 F.Supp. 704 (D.Md.1979); *Ohland v. City of Montpelier*, 467 F.Supp. 324 (D.Va.1979); *Gross v. Pomerleau*, 465 F.Supp. 1167 (D.Md.1979); *Shuman v. City of Philadelphia*, 470 F.Supp. 449 (E.D.Pa. 1979).

Nor is this a case where plaintiff has alleged a persistent pattern or practice by municipal officials which amounted to a "custom or usage" within the meaning of *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the case relied upon by the Court in *Monell* for its definition of those terms. See *Mayes v. Elrod*, 470 F.Supp. 1188 (N.D.Ill.1979). Rather, plaintiff here is alleging that the municipality's policy is not reflected in clearly articulated rules and regulations or in a pattern or practice but rather in conduct—principally failure to take disciplinary action—on the part of those in senior policy making roles.

1. In *Owen v. City of Independence, Mo.*, 589 F.2d 335 (8th Cir. 1978), *cert. granted*, 48 U.S. L.W. 3217 (1979), an official policy was found not in an ordinance or regulation but rather in the official conduct of the City in discharging its police chief. The Supreme Court may decide not only whether municipalities, like supervisory personnel, are entitled to a qualified immunity but also whether official conduct of the sort involved in *Owen* may constitute a policy within the meaning of *Monell*. Immunity is not at issue in this case.

■ The City's first objection to the decision below is that the district court erred by adopting our language in *Turpin I* to charge the jury that a municipality may be held liable when it "authorizes, sanctions or ratifies unconstitutional action taken by one of its police officers."[2] However, we find no significant difference between the district court's instructions here and the principles announced in *Monell*. We must therefore reject at the outset appellant's suggestion that an "official policy" within the meaning of *Monell* cannot be inferred from informal acts or omissions of supervisory municipal officials. Indeed, by holding that a municipality can be held liable for its "custom" *Monell* recognized that less than formal municipal conduct can in some instances give rise to municipal liability under § 1983. To require that senior officials must have formally adopted or promulgated a policy before their conduct may be treated as "official" would for present purposes render *Monell* a nullity, exalting form over substance. Moreover, in formulating a standard in *Turpin I* for determining municipal liability we looked for guidance to those cases that had addressed the liability of a municipal supervisor under § 1983, notably the Supreme Court's decision in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), where it denied relief

2. The charge reads in relevant part.

"Now, if you find that Turpin was denied a constitutional right by reason of his arrest, then the next question asks you to consider whether the City of West Haven is liable for that denial of constitutional right. And as I indicated, the standards for assessing the liability of the City are different from the standards for assessing the liability of the officer.

"If a police officer denies a person his constitutional rights by making an unlawful arrest, the town or city that employs that officer is not liable for such a denial of right simply because of the employment relationship. But there are circumstances under which a city is liable for the unconstitutional action of one of the police officers whom it employes [sic].

"This occurs whenever a city authorizes, sanctions, or ratifies unconstitutional action taken by one of its police officers.

"In the circumstances of this case the City of West Haven can be found to have authorized or sanctioned a denial of Turpin's rights only if the town had a policy of encouraging harassment of Turpin and if that policy was a proximate cause of Turpin's arrest.

"Plaintiff contends that such a policy existed. He relies on the conduct of the town's Board of Police Commissioners in the aftermath of the episode involving Turpin and Officer Skeens; that is, the 1971 episode.

"The plaintiff's claim is that the Board of Police Commiisioners, acting as an agency of the City of West Haven, by its response to the Skeens episode, taking into account whatever it did or failed to do, its total response, encouraged police harassment of Turpin. The town disputes that there was any such policy or encouragement of harassment.

"The existence of such a policy is a question of fact for you to determine. The policy, if it existed, need not be expressed in writing; it may be an implicit policy.

"The policy, if it existed, need not indicate any particular form of harassment. It would be sufficient if from the episode concerning Skeens and the city's response in the aftermath of that episode there was a policy of harassing Turpin by any improper police behavior, including the making of an unlawful arrest.

"If a policy existed it may be found to be the policy of the city if the policy was adopted expressly or implicitly by high level officials of the town functioning at the policy making level.

"So the first issue with respect to the town's liability is—the city's liability, excuse me, is whether the City of West Haven did have a policy of harassing Thomas Turpin.

"If such a policy existed, the next issue concerning the city's liability is whether or not that policy was a proximate cause of Turpin's arrest.

"To be a proximate cause of an event, such as an arrest, simply means to be one substantial factor in causing the event to occur.

"Plaintiff claims Mailet made the arrest in pursuance of a policy of the city to harass himself, that is, Turpin. The city denies that the arrest was made for such a reason. Again, it is a question of fact for you to determine.

"One further point with respect to the liability of the City of West Haven. If you find that Turpin's arrest was unlawful, that is, without probable cause, and if you find that Officer Mailet was motivated by his own desire to get back at Turpin because Turpin had won a lawsuit against Officer Skeens, that circumstance alone would not make the City of West Haven liable for an unlawful arrest.

"The city is liable only if it authorized, or sanctioned, or encouraged the arrest by having a policy of harassing Turpin, and if such a policy was a proximate cause of Turpin's arrest."

because plaintiffs had there failed to show an "affirmative link between the occurrence of the various incidents of police misconduct and *the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct.*" 423 U.S. at 371, 96 S.Ct. at 604 (emphasis added). Thereafter in *Turpin II* we held that the standard announced in *Turpin I* "was essentially co-extensive" with the standard announced in *Monell.* We see no reason to question that holding here.[3] We accordingly hold that if the City of West Haven impliedly or tacitly authorized, approved or encouraged harassment of Turpin, it promulgated an official policy within the meaning of *Monell.*

Appellant, however, contends that § 1983 does not authorize recovery where municipal inaction—in this case failure to discipline Skeens—causes the subsequent unconstitutional conduct. Although a number of courts have held that a supervisor may not be held liable unless he affirmatively participates in, encourages or directs the commission of illegal acts, e. g., *Coffy v. Multi-County Narcotics Bureau,* 600 F.2d 570 (6th Cir. 1979); *Lewis v. Hyland,* 554 F.2d 93 (3d Cir.), *cert. denied,* 434 U.S. 931, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977); *Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977), others have permitted recovery if the supervisor's failure to act is blameworthy. See, *Little v. Walker,* 552 F.2d 193 (7th Cir. 1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978); *Redmond v. Baxley,* 475 F.Supp.

1111 (E.D.Mich.1979). More important, the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), held that to state a cause of action against public officials for the deprivation of the right to be free of cruel and unusual punishment plaintiff must allege "*acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.*" 429 U.S. at 106, 97 S.Ct. at 292 (emphasis added).

The allegations here clearly meet that standard.[4] We see no reason why an official policy cannot be inferred from the omissions of a municipality's supervisory officials, as well as from its acts. The issue of authorization, approval or encouragement is generally one of fact, not law. For example, where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts. See *Smith v. Ambrogio,* 456 F.Supp. 1130, 1136 (D.Conn. 1978); *Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979). Although that standard is undoubtedly difficult to meet, see *Lewis v. Hyland, supra; Smith v. Ambrogio, supra* at 1136, we cannot say as a matter of law that failure to act may never give rise to an official policy within the meaning of *Monell.*[5]

Appellant next contends that, even if a policy can be inferred from omissions of

---

**3.** In *Turpin I* we relied on the *Rizzo* standard in part because it involved an injunctive action against supervisory personnel which we reasoned was quite similar to a suit against a municipality itself. The fact that we now proceed under § 1983 rather than the Fourteenth Amendment does not in our view render the *Rizzo* standard inapplicable.

**4.** Although we have looked for guidance in construing *Monell's* requirement of an official policy to those cases involving both injunctive and monetary relief for supervisory personnel under § 1983, such as *Rizzo* and *Estelle,* we need not decide whether a municipality's liability for the acts and omissions of its senior officials is always co-extensive with a supervisor's liability for those same acts and omissions. We need

not decide, for example, whether a plaintiff could recover monetary damages against a municipality but not against the supervisory personnel or whether a municipality is entitled to the same sort of qualified immunity as are supervisory personnel. The latter issue is presently before the Supreme Court. See *Owen v. City of Independence, Mo., supra.*

**5.** An even stronger case for imposing liability for inaction occurs when the municipality fails to remedy a specific situation, the continuation of which causes a deprivation of constitutional rights. See *Smith v. Ambrogio,* 456 F.Supp. 1130, 1136 (D.Conn.1978). That, of course, is not this case.

a municipality, such as where it acquiesces in a pattern of illegal conduct, such a policy cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality. We agree that, absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force. See, e. g., *Smith v. Ambrogio, supra; Schramm v. Krischell*, 84 F.R.D. 294 (D.Conn.1979); *Randle v. Gokey*, 469 F.Supp. 452 (N.D.Ohio 1979); see *Knight v. Carlson*, 478 F.Supp. 55 (E.D.Cal.1979); *Stringer v. City of Chicago*, 464 F.Supp. 887 (N.D.Ill.1979); *Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977); *Jones v. McElroy*, 429 F.Supp. 848 (E.D.Pa.1977).[6] However, a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or "gross negligence" on the part of officials in charge. See *Owens v. Haas*, 601 F.2d 1242 (2d Cir. 1979). See *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978). But cf. *Popow v. Margate*, 476 F.Supp. 1237 (D.N.J.1979) (rejecting *Owens*).

■ Applying these principles here, Turpin alleged not merely a *first* unlawful arrest, which might properly be dismissible against the City, but a *second* arrest (May 6, 1975) claimed to have been caused by a policy of the City to harass Turpin in violation of his constitutional rights. Unlike the "first arrest" cases, which struggle with whether a single episode can suggest a policy, his claims were sufficient to entitle him to a trial.[7] Indeed, we so held in *Turpin I.*

■ The fatal weakness in Turpin's case lies not in his allegations but in his failure to prove any official policy. Viewed most favorably to Turpin, see *Mattivi v. South African Marine Corp., "Huguenot,"* 618 F.2d 163, 167–168 (1980); *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970), the evidence of official policy supposedly authorizing Mailet's unlawful arrest of Turpin consisted solely of the Board's failure to discipline Skeens for a single incident of illegality. There was no evidence of a prior pattern or practice of harassment on the part of the police force, much less that it had been brought to the attention of the Board. Nor was there any evidence that the Board, either at or prior to the time of its failure to discipline Skeens or even at the time when Mailet arrested Turpin, knew of or should have known of any police animus toward Turpin. The sole evidence of animus consisted of Mailet's arrest and a few comments made by officers immediately after that arrest.

---

**6.** Indeed, in a separate concurring opinion in *Turpin I,* Judge Oakes identified as a limitation on damage suits against municipalities the requirement that the action complained of must be the sort of abuse of power that raises an ordinary tort to a constitutional violation. According to Judge Oakes, this criterion would eliminate some substantial cases, "such as, for example, those for a first false arrest." 579 F.2d at 169.

**7.** As Judge Newman observed in *Smith v. Ambrogio, supra* at 1134 n.3:

"There is room for inquiry as to whether the Supreme Court intends to recognize a cause of action against a municipality in all circumstances contemplated by the Second Circuit. The focus of *Monell* is on deprivations of constitutional rights undertaken pursuant to municipal policy, whether officially promulgated or authorized by custom. *Turpin [Turpin I]* recognizes a cause of action where a specific episode—the arrest of the plaintiff—can be said to have been authorized by official decision-making. *Monell* could be viewed as permitting an unarticulated policy to be inferred only where deprivations of constitutional rights occurred so repeatedly as to indicate a pattern of officially condoned unlawful conduct. *Turpin*, on the other hand, alleged no pattern of unconstitutional deprivations against citizens generally, but a 'policy' of unconstitutional action arising out of a single prior episode and its aftermath. Though *Monell* was concerned with a general policy enforced against a large class of individuals, it seems reasonable to conclude that its teachings are equally applicable to a specific policy directed at just one individual, as long as the pleaded facts support the inference that unconstitutional action was taken against the individual pursuant to such policy."

The evidence of publicity consisted of two backpage newspaper articles, one reporting the Board's decision and the other reporting criticism by Turpin's attorney of the Board's failure to discipline Skeens. Thus the Board's failure to take action, while perhaps unwise in the light of later events, appears to have been nothing more than an uneventful decision made not in the glare of publicity but rather in the regular course of its business and hardly an indication of any policy authorizing or encouraging police harassment of Turpin. Indeed, Skeens' conduct had occurred more than three and one-half years earlier and Turpin's complaint filed with the Board regarding Skeens' action had been withdrawn back in 1972. Although Judge Newman's decision finding Skeens liable and awarding $3,500 damages had only recently been handed down, the Board had been advised by the City's counsel in rather vigorous terms that the decision was clearly erroneous.

Although Turpin apparently concedes that the failure of the Board to discipline Skeens, standing alone, would not constitute official encouragement of police harassment of Turpin, he seeks to surmount that obstacle by noting that the Board did more than simply fail to discipline Skeens, it promoted him to the Detective Bureau. However, the July 15, 1975, promotion postdated Mailet's unlawful arrest of Turpin which had occurred on May 6, 1975. The promotion therefore played no part in causing the arrest nor would it be entitled to much weight in deciding whether the City had adopted a policy to harass Turpin back in April.

Turpin's proof of an official policy of harassment therefore boiled down to the Board's failure to discipline Skeens. In denying the City's motion for judgment n. o. v. Judge Newman recognized that whether this evidence was sufficient to meet the applicable standard presented a "close question," which "probably should be reviewed by the Court of Appeals." Upon this review we conclude that the evidence was inadequate as a matter of law. Although the Board's failure might suggest a slight disregard for Turpin's rights,[8] it falls far short of constituting deliberate indifference to those rights or a tacit encouragement of members of the Police Department to go out and harass Turpin. While it is true that juries are entitled to some latitude in drawing inferences as to the existence of an official policy and that the standard for a directed verdict and a judgment notwithstanding the verdict is a difficult one to meet, *Simblest v. Maynard, supra; Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970); *C-Suzanne Beauty Salon, Ltd. v. General Insurance Co. of America*, 574 F.2d 106, 112 n.10 (2d Cir. 1978), there are limits to that latitude, which were exceeded in the present case. In our view no reasonable person could find, in the light of the evidence adduced at trial, that Mailet's unlawful arrest of Turpin was made pursuant to any official policy on the part of the City of West Haven.

In reaching this conclusion we not only give Turpin the benefit of every reasonable inference that might be drawn from the evidence but find the proof here to be significantly distinguishable from that in cases where responsible municipal officials, aware of a pattern of unconstitutional action on the part of the municipality's officer or officers, authorize or encourage further misconduct by failing to act. See *Lewis v. Hyland, supra* at 101 (obliviousness and insensitivity to citizen complaints, while reinforcing an impression of official indifference, is not enough to establish a causal link

---

**8.** This case is made difficult principally because the members of the Board, perhaps on the advice of counsel, were reluctant to state the reasoning for the Board's decision on April 8, 1975, to take no further action against Skeens. Had the witnesses simply stated that they thought that in light of all of the circumstances no further action against Skeens was warranted, a decision would have been facilitated. Nevertheless, we find that the recalcitrance of the witnesses, though suggesting some slight decree of indifference to Turpin's rights, is simply not enough to support an inference that the members of the Board were deliberately indifferent to those rights.

between the hierarchy and the employees). But cf., *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976); *Popow v. City of Margate, supra; Moon v. Winfield*, 383 F.Supp. 31 (N.D.Ill. 1974). We are also conscious of that unusual type of case where particularly egregious conduct on the part of a group of officers warrants an inference of official acquiescence, see *Owens v. Haas, supra*. Here, however, we have no proof of either a pattern of illegality or of an incident of the *Owens v. Haas* type. The proof here, in contrast, that Mailet's arrest of Turpin was caused by the inaction of the Board is simply too attenuated to support municipal liability under § 1983. To permit liability to be predicated upon such evidence would totally overextend the principles of *Monell* and *Rizzo*. This we decline to do.

The judgment against the City of West Haven is reversed.