June Aaron SANDERS, Appellant,

v.

ST. LOUIS COUNTY; Alexander Forde
and Frederick C. White, Appellees.

No. 83–1357.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 30, 1983.

Decided Dec. 30, 1983.

Lashly, Caruthers, Baer & Hamel, P.C., Amy Rehm Hinderer, Robert E. McWilliams, Jr., St. Louis, Mo., for appellant.

Eugene K. Buckley, Evans & Dixon, St. Louis, Mo., for appellees.

Before BRIGHT, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

PER CURIAM.

June Aaron Sanders filed this suit under 42 U.S.C. § 1983 against St. Louis County and two county employees alleging deprivations of his constitutional rights. After trial, the jury found for Sanders on his claim against the county, but for the individual defendants. The district court[1] granted the county's motion for judgment notwithstanding the verdict, and Sanders appeals.

Sanders was convicted of second degree murder and incarcerated at the Missouri State Penitentiary. In 1977 he filed a post-conviction motion with the state court to set aside the conviction. On July 23, 1980 he was transferred to the St. Louis County Jail so that he could attend a local court hearing on this motion. Sanders spent ten days at the jail. Sanders alleges that there was a well-established custom at the St. Louis County Jail of mistreating inmates who challenged their convictions in court, and that such a custom violated his due process rights.[2]

Sanders was the only witness for the plaintiff. According to his trial testimony, a guard, defendant Alexander Forde, refused to allow Sanders access to the gym, stating that "we don't owe anything to writ writers." Sanders also testified that a cellmate, one Herman Arch, terrorized and intimidated him, and once pushed him into a bunk bed; the push resulted in a cut lip. Sanders stated that a nurse refused to treat him for the cut lip, telling him that "we are not obligated to writ writers." Finally, Sanders testified that he sent letters to his social worker, defendant Fred White, and to the warden requesting a transfer to a cell away from Arch, but that he was not transferred.

The district court, in setting aside the verdict against St. Louis County, found that Sanders had failed to establish that a custom of mistreating "writ writers" was in place. In the circumstances of this case, we agree.

■ The county does not dispute that Sanders cannot constitutionally be treated less favorably than other inmates because of his writ writing. It is settled that an inmate's constitutional right of access to the courts cannot be impaired, either directly, by intercepting mail or prohibiting contact with an attorney, or indirectly, by threatening or harassing an inmate in retaliation for filing lawsuits. *Milhouse v. Carlson,* 652 F.2d 371, 373–74 (3d Cir.1981); *Ferranti v. Moran,* 618 F.2d 888, 892 (1st Cir.1980); *Russell v. Oliver,* 552 F.2d 115, 116 (4th Cir.1977). It is not necessary that the inmate succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit the inmate's right of access. *Hudspeth v. Figgins,* 584 F.2d 1345 (4th Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979). Although the jury found for the individual county employees, it appears that Sanders may have had evidence of unequal treatment sufficient to raise a jury

---

1. The Honorable Edward L. Filippine, United States District Judge, Eastern District of Missouri.

2. To the extent Sanders argues that he was subjected to cruel and unusual punishment by not being transferred to another cell, and by the lack of medical treatment, we find his claims meritless. Even taking as true his trial testimony, there was no evidence that he was deprived of necessary medical care; rather, he was given nothing for a cut lip which he conceded healed by itself in a short time. That does not qualify as cruel and unusual punishment. Further, the intimidation practiced on Sanders by his cellmate was principally in the form of threats and verbal, not physical, abuse. While Arch's behavior may have annoyed and daunted Sanders, it did not result in the kind of harm against which the Constitution is designed to protect. In this case the physical and psychological intimidation did not rise to the level of a constitutional violation.

question as to whether county employees had denied him privileges because of his "writ writing." *Russell v. Oliver,* 552 F.2d at 116.

■ However, Sanders must prove more than that individual county employees violated his constitutional rights. Generally, a county is protected from liability when an employee violates another's civil rights. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). But the absence of respondeat superior liability does not always shield a county. When the employee's unconstitutional act can be characterized as execution of an established governmental policy or custom, the county is charged with the deprivation. *Id.* at 694, 98 S.Ct. at 2037.

In *Monell,* the Supreme Court stated that the unconstitutional act must have occurred pursuant to "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694, 98 S.Ct. at 2037. In *McLaughlin v. City,* 662 F.2d 1385, 1388 (11th Cir.1981), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982), the Eleventh Circuit found that a police chief's failure to act after a citizen complaint that a police officer had beaten him did not make the chief liable for a second beating; the first "isolated incident" was not enough to establish a policy or custom of ignoring citizen complaints of beatings. In *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), the court noted that official policy or custom requires that a city impliedly or tacitly authorize, approve, or encourage illegal conduct by its employees. In *Turpin,* the court noted that a "policy" could not ordinarily be inferred from a single incident of arrest without probable cause; the court found that two such arrests—of the same person—did establish such a policy. *Id.* at 202; *see generally Powe v. City of Chicago,* 664 F.2d 639, 649–51 (7th Cir.1981), and cases discussed therein.

■ In this case, the jury decided that Sanders had proven the existence of a cus-

tom or policy. In ruling on the county's motion for judgment n.o.v., the district court was required to view the evidence in the light most favorable to Sanders and give Sanders the benefit of all legitimate inferences. *E.g., Banks v. Koehring Co.,* 538 F.2d 176, 178 (8th Cir.1976). The verdict must be sustained if there is substantial evidence supporting it. *Id.* We apply that same standard in our review. *Dulin v. Circle F Industries, Inc.,* 558 F.2d 456, 465 (8th Cir.1977).

■ There is very little evidence in favor of Sanders. There are the two statements by county employees that writ writers were not entitled to the same privileges other inmates received, accompanied by denials of use of the gym and noncritical medical care. The inaction of the social worker and the warden on Sanders' request for a transfer were not directly connected to Sanders' status as a writ writer, but that inaction does lend some support to Sanders' contentions.

We are simply unable to conclude that this skimpy evidence is sufficient to show that St. Louis County had a policy or custom of treating writ writers less favorably. The deprivations were less serious than those in *Turpin,* and were much less likely to come to the attention of those in charge than the unconstitutional arrests in *Turpin.* Indeed, in his letters to the warden and his social worker, Sanders did not mention the unequal treatment; he merely complained about his cellmate. Thus, there is no evidence that the warden or any other supervisor had any knowledge of the comments of the jail employees. Further, Sanders does not dispute that the jail's policy of not allowing convicted prisoners access to the gym was actually motivated by security concerns; Forde testified without contradiction that the gym was not as secure as other parts of the jail, that two escapes had occurred, and that for these reasons convicted prisoners were not allowed to use the gym. Thus, regardless of Forde's statement to Sanders, the evidence showed that the deprivation of access to the gym was motivated not by a desire to punish a writ writer but by reasonable security needs.

Sanders also testified that he had alternatives for seeking medical help other than a request to the nurse. Sanders conceded that after the nurse refused to provide him with ointment for his lip injury, he could have filled out a slip requesting treatment from a doctor. He did not fill out this form or make any other request for treatment. Sanders admitted that on another occasion when he requested medicine for a rash from a different nurse, the medicine was provided. He also admitted that other requests made by letter to his social worker had been answered. These admissions further dilute his claim that there was a policy of ignoring and mistreating writ writers.

We cannot find that comments by two county employees are enough to establish a pattern from which a custom or policy can be inferred, especially in view of the uncontroverted evidence, presented by Sanders himself, which is inconsistent with such a finding. We recognize that it is not our role but the jury's to evaluate and weigh the evidence, but we cannot sustain a verdict unless some evidence of substance supports it. *Banks v. Koehring Co.,* 538 F.2d at 178. A mere scintilla of evidence is not enough. *Tackett v. Kidder,* 616 F.2d 1050, 1053 (8th Cir.1980). Here, detailed examination of the record as a whole discloses no justification for a finding that there was a policy or custom of mistreating writ writers.

Sanders also argues that because of the warden's position as head of the jail, his actions are directly attributable to the county, and that no showing of custom or policy is required. This may be so in some circumstances, but it is not the case here.

It may be that one act of a senior county official is enough to establish the liability of the county, if that official was in a position to establish policy and if that official himself directly violated another's constitutional rights. *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037; *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 448 (2d Cir.1980); *Bowen v. Watkins,* 669 F.2d 979, 989-90 (5th Cir.1982). However, this is a substantially different case. First,

the contours of the warden's authority were not clearly drawn at trial, so we have no way of knowing who supervised him or what limits were placed on his actions. Second, the warden's action—ignoring an inmate's request for a transfer—was not in and of itself unconstitutional. Prison authorities have a great deal of discretion in running their institutions, and an inmate normally has no liberty interest in where he is housed. *Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Nor was an eighth amendment violation shown by the non-transfer. *See* footnote 2. Finally, the warden's action was in no way shown to be related to Sanders' status as a writ writer.

The district court acted properly in granting the motion for judgment n.o.v. and its judgment hereby is affirmed.