Victorino **LOZA**

v.

**Michael P. LYNCH, et al.**

**Civ. No. B–83–414(EBB).**

United States District Court,
D. Connecticut.

Jan. 7, 1986.

Betty G. Levy, Richard L. Jacobs, Jacobs and Levy, New Haven, Conn., for plaintiff.

Deborah Morgan Steeves, Barry Boodman, Deputy Corp. Counsel, Stamford, Conn., Richard T. Meehan, Sr., Bridgeport, Conn., for defendants.

## RULING ON MOTION TO DISMISS

ELLEN B. BURNS, District Judge.

The plaintiff brings this action in four counts against a police officer and the City of Stamford (the "City"). The first count alleges a civil rights violation by the police officer for an alleged brutal beating and arrest without probable cause occurring on July 11, 1980. The second and third counts are pendent state claims also against the police officer. The fourth count, and the one attacked by the instant motion, is a *"Monell"* count brought against the City. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because the fourth count alleges facts from which a jury might reasonably infer that the City had a "custom or policy" that caused a violation of plaintiff's constitutional rights, the motion to dismiss must be denied.

I. *Facts*

For the purposes of deciding the instant motion the allegations set forth in plaintiff's complaint will be accepted as true. *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 57 (2d Cir.1985). The complaint may only be dismissed " 'if it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations.'" *Id.* at 58, quoting *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984).

The complaint sets forth the following scenario. Late in the afternoon of July 11, 1980, plaintiff was operating a motorcycle on the streets of Stamford. Police Officer Lynch was on duty at that time and ordered the plaintiff to stop his motorcycle. Officer Lynch informed plaintiff that his muffler was making an excessive amount of noise. The officer asked plaintiff to produce his license and registration. When plaintiff reported that these documents were located at an address on Warren Street in Stamford, Officer Lynch followed plaintiff to that address.

When they arrived at Warren Street, the complaint alleges that Officer Lynch, for no apparent reason, grabbed plaintiff from behind, pushed him into the side of the police car and a wire fence, and hit him on the head several times with a black jack. Plaintiff suffered severe injuries from this beating. Officer Lynch proceeded to arrest plaintiff for interfering with a police officer and assault on a peace officer. The charge of assault was dropped and plaintiff was tried on the charge of interfering and found not guilty.

Count Four adds the following additional allegations. On February 18, 1977, a report of a psychological screening of Officer Lynch was prepared as part of a hiring procedure. That report was received by the City and allegedly concluded that Officer Lynch was hostile, demonstrated a propensity towards violence, and was a poor risk as a police officer. The City proceeded to hire Officer Lynch despite having full knowledge of the psychological report.

On November 29, 1978, a citizen's complaint was filed against Officer Lynch by a Mr. Walker. Walker alleged that Officer Lynch, while responding to a call on September 10, 1978, dragged him from his car and beat him. It is alleged that no action was taken by the City against Officer Lynch in response to this citizen's complaint.

On July 30, 1980, another citizen's complaint was lodged against Officer Lynch by a Mr. Pepper. Pepper alleged that he was stopped in his vehicle by Officer Lynch and another officer on June 27, 1980, and was beaten about the head and body by the two officers. Again, it is alleged that no action was taken by the City.

The fourth count ends with the conclusory allegation that the earlier recited facts demonstrate a policy or custom on the part of the City to allow a police officer who was known to be violent and to inflict physical abuse upon citizens to carry a badge of authority and to come in contact with others in the exercise of that authority. Such a policy is claimed to condone and encourage the types of civil rights violations suffered by the plaintiff.

## II. *Discussion*

The law regarding municipal liability has been in a state of flux since the Supreme Court decision in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* involved a radical departure from the earlier Supreme Court precedent of *Monroe v. Pape*, 365 U.S. 167, 191, 81 S.Ct. 473, 486, 5 L.Ed.2d 492 (1961), which held that municipalities were not "persons" subject to liability under section 1983. *Monell* overruled *Monroe* to the extent that it held that a municipality may be liable under section 1983 if a violation of federally protected rights is "caused" by an official policy or custom of the municipality. 436 U.S. at 690–92. However, the *Monell* court took great pains to note that a municipality would not be liable under the doctrine of *respondeat superior* for acts of its employees not taken pursuant to official policy or custom. *Id.* 436 U.S. at 692–94, 98 S.Ct. at 2036–38. In other words, a municipality would only be liable for violations of federally protected rights which were *caused* by the municipality itself. *Id.*

Although the *Monell* court attempted to make clear that a municipality would only be liable for violations of federal rights

caused by the municipality, it recognized that not all municipal policies and practices are adopted in a formalized manner. 436 U.S. at 691, 98 S.Ct. at 2036. A municipality could therefore be liable for acts of its employees taken pursuant to an officially adopted policy or a "custom or usage" which had taken on the "force of law." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)).

■ Since the decision in *Monell,* circuit and district courts have wrestled with the pleading requirements of a *Monell* count. On the one hand, Rule 8 of the Federal Rules of Civil Procedure allows a plaintiff to plead a "short and plain statement" of his claim. *See Batista v. Rodriquez,* 702 F.2d 393, 397 (2d Cir.1983). However, courts of this district have consistently noted that a "boilerplate pleading" of a municipal custom or practice is insufficient to "justify the extensive litigation such a claim entails." *Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978). *See also Thurman v. City of Torrington,* 595 F.Supp. 1521 (D.Conn.1984); *Appletree v. City of Hartford,* 555 F.Supp. 224 (D.Conn. 1983); *Schramm v. Krischell,* 84 F.R.D. 294 (D.Conn.1979). In effect, these cases have held that, in order to satisfy the requirements of Rule 8 in pleading a *Monell* count, a plaintiff must set forth facts showing the existence of the offending custom or policy. *Cf. Fine v. City of New York,* 529 F.2d 70, 73 (2d Cir.1975) (civil rights complaints must set forth allegations of facts showing a deprivation of protected rights). A mere conclusory allegation is insufficient to meet this requirement. *Id.*

When a complaint alleges the existence of a custom or practice that has not been formally adopted, the plaintiff "must typically point to facts outside his own case to support his allegation of a policy on the part of a municipality." *Thurman v. Torrington,* 595 F.Supp. at 1530. However, some cases have held that a policy or custom may be inferred by pleading a single unusually brutal or egregious act on the part of municipal employees. *Owens v. Haas,* 601 F.2d 1242, 1246 (2d 1979); *Douglas v. City of Hartford,* 542 F.Supp. 1267, 1271 (D.Conn.1982).

■ The Supreme Court has recently determined that proof of a single egregious incident, without more, cannot serve to establish municipal liability under *Monell. Oklahoma City v. Tuttle,* — U.S. —, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In writing for the plurality in *Tuttle,* Justice Rehnquist emphasized that *Monell* required the plaintiff to demonstrate that his injury resulted from a wrong committed by the municipality itself. — U.S. at —, 105 S.Ct. at 2433. When that wrong is caused by an officially adopted policy, a single unconstitutional application of that policy is sufficient to establish municipal liability. *Id.* at —, 105 S.Ct. at 2435. However, when plaintiff seeks to establish an unofficial custom through inference, he or she must present evidence beyond the constitutional violation alleged in the complaint. *Id.* To hold otherwise, Justice Rehnquist reasoned, would allow a jury to infer the existence of an unconstitutional policy on the basis of a single unauthorized act, a result perilously close to the *respondeat superior* theory rejected by *Monell. Id.*

The plurality declined to decide whether the municipal policy must itself be unconstitutional or whether liability would attach whenever a municipal policy is the "'moving force' behind subsequent unconstitutional conduct." — U.S. at —, n. 7, 105 S.Ct. at 2436, n. 7. However, Justice Brennan, writing for three members of the court,[1] made clear his view that there is no need for a plaintiff to show that a municipal policy is unconstitutional on its face. Because section 1983 imposes liability whenever a "statute, ordinance, regulation, custom, or usage" *causes* a deprivation of federally protected rights, a plaintiff need

---

1. Justice Stevens dissented, arguing that a municipality should be subject to vicarious liability for the unconstitutional acts of its employees.

— U.S. at —, 105 S.Ct. at 2441. Justice Powell took no part in the decision.

only show that a municipal policy existed and that this policy " 'subjected' or 'caused him to be subjected' to a deprivation of a constitutional right." — U.S. at ——, 105 S.Ct. at 2437.

 Justice Brennan's view, that the policy need not be facially unconstitutional if it is the moving force in causing a deprivation of a constitutional right, appears to be the view adopted in this circuit. *See Batista v. Rodriquez*, 702 F.2d 393, 397 (2d Cir.1983); *Turpin v. Mailet*, 619 F.2d 196, 201–02 (2d Cir.), *cert. denied* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Owen v. Haas*, 601 F.2d 1242, 1247 (2d Cir.1979); *Duchesne v. Sugarman*, 566 F.2d 817, 832 (2d Cir.1977). Under the approach taken by the Second Circuit, a custom or policy not facially unconstitutional, such as improper training or inadequate supervision, may provide the basis for municipal liability if it amounts to deliberate indifference to, or a tacit authorization of, constitutional violations. *Zanghi v. Incorporated Village of Old Brookfield*, 752 F.2d 42, 45 (2d Cir.1985); *Turpin v. Mailet*, 619 F.2d at 201. Although this standard places a high burden of proof upon a plaintiff, a complaint which alleges facts sufficient to support a jury finding of deliberate indifference or tacit authorization must withstand a motion to dismiss. *See Turpin v. Mailet*, 619 F.2d at 201. *Cf. Turpin v. Mailet*, 579 F.2d 152, 169 (2d Cir.1978), as modified by *Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979) (en banc) (allowing claim against municipality when complaint alleges that unconstitutional acts were authorized, sanctioned, or ratified by municipal officials functioning at policy-making level).

 Applying these principles to the instant complaint requires the finding that plaintiff has met the minimal pleading requirements necessary to state a claim against the City of Stamford. He has asserted that the City of Stamford had actual knowledge of a psychological report showing the officer defendant to be a danger to the community. Despite this report the City allowed the officer to assume the badge of authority of the police department and patrol the streets with instruments of deadly force. The complaint further alleges that the City was aware of at least one incident in which this officer allegedly used excessive force and that the City took no action as a result of the citizen complaint.[2] Finally, the complaint alleges that Officer Lynch was involved in a second incident of use of excessive force prior to the beating allegedly inflicted on the plaintiff. The City apparently did not get notice of this second incident until after the beating of the plaintiff. Nevertheless, the complaint alleges that the City took no action as a result of this second incident. The allegation of the second incident involving Officer Lynch, standing alone, would not be sufficient to establish municipal liability because the City did not receive notice until after the alleged beating of the plaintiff. *Batista v. Rodriquez*, 702 F.2d at 398; *Turpin v. Mailet*, 619 F.2d at 203. However, the City is alleged to have a policy or custom of allowing a known dangerous individual to be clothed in the authority of the City police force. Evidence of inaction by the City in light of citizens' complaints about this officer, even though occurring after the incident set forth in plaintiff's complaint, is probative of the existence *vel non* of such a policy or custom. Rule 401, Federal Rules of Evidence. The fact that such evidence standing alone would be insufficient to carry plaintiff's burden does not prevent the court from considering post-event allegations in light of the other allegations set forth in the complaint.

## III. *Conclusion*

The complaint meets the minimum pleading requirements to set forth a claim

---

2. The fourth count of the complaint alleges that "no action was taken against Officer Michael P. Lynch" as a result of Mr. Walker's complaint. The court construes this allegation as an assertion that the City failed to investigate Officer Lynch's involvement in the incident. A showing that an adequate investigation was conducted and the citizen's complaint found to be without merit could defeat the plaintiff's assertions that the City had knowledge of an actual incident in which Officer Lynch used excessive force. *See Turpin v. Mailet*, 619 F.2d at 203.

against the City of Stamford for violation of plaintiff's constitutional rights. The allegations, construed most liberally in plaintiff's favor, may support a jury conclusion that the City displayed a deliberate indifference to the constitutional rights of citizens by allowing Officer Lynch to carry the badge of authority of the City police. Accordingly, the motion to dismiss the fourth count of the complaint is denied.

SO ORDERED.