Jeremy M. SHERRELL, A Minor, Acting By and Through his Guardian Phyllis WOODEN, Plaintiff,

v.

The CITY OF LONGVIEW, Police Chief James McLaughlin, Deputy Police Chief Neil McKinney, and Former Police Officer Kenneth Alan Kavanaugh, Sergeant Phil English, Defendants.

Civ. A. No. TY–87–240–CA.

United States District Court, E.D. Texas, Tyler Division.

Dec. 30, 1987.

Guy N. Harrison, Mobley, Green & Harrison, Longview, Tex., for plaintiff.

Michael R. Buchanan, Dallas, Tex., T. John Ward, Sharp, Ward, Price & Searcy, Longview, Tex., for City of Longview and McLaughlin.

Robert W. Weber, Atchley Russell Waldrop & Hlavinka, Texarkana, Tex., for McKinney and English.

Kenneth A. Kavanaugh, pro se.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

·Defendants City of Longview, Police Chief James McLaughlin, Deputy Chief Neil McKinney, and Sergeant Phil English move to dismiss the complaint for failure to state a claim upon which relief can be granted, under Fed.R.Civ.P. 12(b)(6). In the alternative, they move for a more definite statement, pursuant to Fed.R.Civ.P. 12(e).[1]

The party bringing a motion to dismiss under Rule 12(b)(6) bears the burden of demonstrating that no claim has been stated upon which relief can be granted. 2A *Moore's Federal Practice* ¶ 12.07[2.–5]. In construing the motion, the court must accept all factual allegations in the complaint as true, and resolve all factual disputes in favor of the plaintiff. *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985). Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Reeves v. Guiffrida,* 756 F.2d 1141,

---

**1.** Two motions to dismiss or for a more definite statement are presently pending before the court. One is brought by the City of Longview and Police Chief McLaughlin; Deputy Chief McKinney and Sergeant English bring the other. Since the two motions are identical in every respect germane here, they will be considered together for the purposes of this opinion.

1143 (5th Cir.1985). The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence in support of his claim, regardless of how unlikely it may appear from the pleadings that he will succeed. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### 1. *Parties' Contentions*

Plaintiff is a young child who was assaulted and seriously injured by the defendant, Kenneth Kavanaugh, in August, 1985. At the time of the assault Kavanaugh was employed as a police officer by the City of Longview, Texas. Kavanaugh had allegedly been given psychological tests in 1982, showing him to have a propensity toward violence and dangerousness, and an inability to control his actions. The police department was aware of these tests, plaintiff contends, yet nonetheless employed him. In addition, Kavanaugh had several times complained to his supervisor, defendant English, of suffering from fatigue and stress, which plaintiff alleges further put the defendants on notice of Kavanaugh's psychological state.

In July 1985, Kavanaugh allegedly assaulted the plaintiff, by hitting him. It appears Kavanaugh at the time was not on-duty. The assault was reported to the police. However, Kavanaugh was not arrested,[2] it is claimed, because he was a police officer and the City of Longview "had a policy of dealing with police officers involved in domestic violence in a manner other than normal ordinary citizens were dealt with, that being, not arresting them and assigning them for counseling." Complaint, statement of facts (paragraph and page unnumbered).

Although not arrested, Kavanaugh was assigned to counseling with another officer, Zerban, who is not a defendant here. Plaintiff asserts that Zerban did not have proper training to undertake such counseling.

A second complaint was made to the police about Kavanaugh's abuse of the plaintiff and his younger brother between July 7 and August 7, 1985. Again Kavanaugh was not arrested, but was merely questioned by the deputy police chief.

Finally, on the evening of August 23, 1985, Kavanaugh took the plaintiff and two siblings to the home of defendant English, advising English that he was under extreme stress and was afraid he would abuse the children. English allegedly "counseled" Kavanaugh, but did not arrest him or take the children away. After leaving English's home, Kavanaugh assaulted the plaintiff, causing him serious injuries, including severing the child's penis.

Plaintiff complains that the failure of the city and the individual police officers to arrest Kavanaugh, even though they knew of his dangerousness to the plaintiff, left Kavanaugh free to assault and injure him. Such failure to arrest Kavanaugh allegedly denied plaintiff due process and equal protection of the law, in violation of 42 U.S.C. § 1983. Plaintiff further claims that the defendants' refusal to arrest Kavanaugh because he was a police officer, reflecting a department policy of treating police officers involved in domestic disputes differently than civilians, also violated plaintiff's rights under Section 1983. Finally, Sherrell claims that the defendants were negligent in hiring and keeping Kavanaugh on the police force, despire his known dangerousness, and in not arresting Kavanaugh after the first assault on the child.

The moving defendants seek dismissal of the complaint, or of individual claims, on the following grounds:

1. That the defendants' alleged failure to protect the plaintiff from Kavanaugh does not rise to the level of a constitutional deprivation;

2. That the plaintiff has failed to allege the specific facts necessary to show that a municipal policy or custom existed and was the "moving force" causing his injury;

3. That plaintiff has failed to allege any discriminatory purpose or intent by the de-

---

**2.** The complaint merely alleges that the police failed to arrest Kavanaugh. It is silent as to whether any charges were brought or filed against him.

fendants, or to negate any rational basis for the alleged discrimination against him;

4. That, as a matter of law, the plaintiff cannot raise a cause of action alleging negligent deprivation of civil rights against the defendants; and

5. That the defendants are shielded by immunity, under the Texas Tort Claims Act, from plaintiff's state law causes of action.

Finally, in the alternative, the defendants move for a more definite statement, on the grounds that the plaintiff has not pled sufficient facts to overcome their asserted qualified immunity defense.

### 2. Allegations of a Constitutional Deprivation

■ Defendants rightly point out that, to make out a Section 1983 claim against the city and its police officers in their official capacity, the plaintiff must allege that their conduct deprived him of a constitutional right, and was not simply a breach of duty imposed under state law. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986); *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979). No constitutional violation is possible here, defendants contend, because they had no constitutional obligation to protect the plaintiff from assault. *Estate of Gilmore v. Buckley*, 787 F.2d 714, 719 (1st Cir.), *cert. denied* — U.S. ——, 107 S.Ct. 270 (1986); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982). They further deny that they were in any custodial or other "special relationship" with the boy, or had any constitutional duty to protect him, even assuming that indeed they were aware of the dangers Kavanaugh posed to the child. They disclaim having undertaken any acts or omissions which placed the child in any special danger or which otherwise "threw him into a snakepit." *Walker v. Rowe*, 791 F.2d 507, 511 (7th Cir.), *cert. denied* — U.S. ——, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986).

Accepting plaintiff's factual allegations as true, as the court must, the complaint sufficiently pleads a constitutional deprivation to withstand the motion to dismiss. As discussed below, plaintiff has alleged a constitutional deprivation under two potentially valid theories.

#### a. Discrimination in police protection

■ The Constitution, because it is "a charter of negative liberties," *Walker*, 791 F.2d at 510, does not generally mandate that police protect a citizen from attack by a private individual. *Estate of Gilmore*, 787 F.2d at 719. Once the government has undertaken to provide the public with protection and law enforcement, however, it cannot do so in a manner which violates the Constitution, such as by discriminating against certain persons on an irrational basis. *Bartalone v. County of Berrien*, 643 F.Supp. 574, 576 (W.D.Mich.1986) (citing *Smith v. Ross*, 482 F.2d 33, 36–37 (6th Cir.1973)); *Dudosh v. City of Allentown*, 629 F.Supp. 849, 854 (E.D.Pa.1985) *and related opinion*, 665 F.Supp. 381 (E.D.Pa. 1987), *reconsideration denied sub nom. Dudosh v. Warg*, 668 F.Supp. 944 (E.D.Pa. 1987).

■ The plaintiff has alleged that he was the victim of a departmental policy providing favored treatment to police officers accused of domestic violence. He is thereby asserting a Fourteenth Amendment deprivation. As the U.S. Court of Appeals for the Seventh Circuit has stated, "[d]iscrimination in providing protection against private violence would of course violate the equal protection clause of the Fourteenth Amendment." *Bowers*, 686 F.2d at 618. Acts of omission in providing police protection, as well as acts of commission, may be discriminatory under the Fourteenth Amendment. *Bartalone*, 643 F.Supp. at 576.

■ Defendants suggest that "a police department is given wide latitude in the dispatch of its own internal affairs," citing *Rizzo v. Goode*, 423 U.S. 362, 378–79, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976). This does not extend, however, to situations in which police authority is used for unlawful purposes. The focus of Section 1983 is on the "[m]isuse of state power, possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law." *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961); *see also Daniels*, 106 S.Ct. at 665–6. Such misuse of state power may exist when a police department or police officers attempt to shield one of their own from the consequences of wrongdoing, by the exercise of their authority. Plaintiff has accordingly alleged the existence of a discriminatory policy that, if proven, could support liability under Section 1983. *Lowers v. City of Streator*, 627 F.Supp. 244, 246–7 (N.D.Ill.1985). Therefore, dismissal is unwarranted.

#### b. "Special relationship"

■ In addition, plaintiff has pleaded sufficient facts to claim that a "special relationship" may have been created between himself and the defendants by their acts, thus imposing upon the defendants an affirmative duty to protect the plaintiff from Kavanaugh. Their failure or refusal to protect him, if proven, would violate the plaintiff's Fourteenth Amendment liberty interest. *Lowers*, 627 F.Supp. at 246; *Jackson v. Byrne*, 738 F.2d 1443, 1447 (7th Cir.1984).

■ Regardless of the fact that the state has no general obligation to protect the public, it bears a constitutional duty to protect certain persons, such as prisoners, which it has placed into its custody. *See Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *Stokes v. Delcambre*, 710 F.2d 1120, 1125–6 (5th Cir.1983). The state by its acts may also create a "special relationship" with a specific individual, that imposes upon it a constitutional duty to care for and protect the individual from known harms. *Escamilla v. City of Santa Ana*, 796 F.2d 266, 268–70 (9th Cir.1986); *Estate of Gilmore*, 787 F.2d at 721; *Estate of Bailey v. County of York*, 768 F.2d 503, 510–11 (3rd Cir.1985); *Jensen v. Conrad*, 747 F.2d 185, 191–94 (4th Cir.1984), *cert. denied* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985); *Bowers*, 686 F.2d at 618. As one court has explained,

If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.

*Bowers*, 686 F.2d at 618.

■ A "special relationship" and hence a duty to protect may exist where the police have knowledge of specific threats of violence to an individual victim by a known attacker, yet refuse to act. *See Martinez v. California*, 444 U.S. at 285, 100 S.Ct. at 559; *Jensen*, 747 F.2d at 194–95 n. 11; *Estate of Bailey*, 768 F.2d at 509. In *Thurman v. City of Torrington*, 595 F.Supp. 1521 (D.Conn.1984), the court stated that the police have an affirmative duty to "take reasonable measures to protect the personal safety" of women who report that they are being threatened by persons with whom they have, or have had, a domestic relationship. *Id.* at 1527. In *Lowers v. City of Streator*, 627 F.Supp. 244 (N.D.Ill.1985), the police were similarly said to have a duty to protect a woman raped twice by the same man, when the victim had identified her attacker after the first rape, had been warned by the police that the suspect might attack her again, and yet the police undertook no action to arrest the suspect or protect the victim from the second rape. And in *Bartalone v. County of Berrien*, 643 F.Supp. 574 (W.D.Mich.1986), the police were held to have a duty to protect a woman murdered by her ex-husband, after she had reported to them that he had threatened to kill her and she had requested that he be arrested. *See also* Annotation, "Governmental Tort Liability for Failure to Provide Police Protection to Specifically Threatened Crime Victims," 46 A.L.R.4th 948, at § 3.

As in the cited cases, plaintiff here has alleged that numerous reports of Kavanaugh's abuse were made to the police, and that they knew of the dangers Kavanaugh posed to the child, yet they repeatedly failed to arrest Kavanaugh over a period of time. A "special relationship" could thus be found on these facts alone. *Dudosh*, 629 F.Supp. at 855; 665 F.Supp. at 382–5.

The fact that the plaintiff is a young child and the victim of child abuse further heightens the possibility that a duty of protection existed here. Texas law reflects special concern for the plight of abused children, and establishes duties on the police to receive and investigate reports of child abuse. *See* Tex.Annot.Fam.Code § 34.01 *et seq.* (Vernon's 1987). Where young children are exposed to abuse, other courts have found a duty to protect on the part of state officials. *E.g., Estate of Bailey,* 768 F.2d at 509–11 (state agency charged with protecting children's welfare may have affirmative duty to protect abused child whose plight is known to the agency); *Jensen,* 747 F.2d at 190–94 (same); *White v. Rochford,* 592 F.2d 381 (7th Cir.1979) (duty of protection where police arrested driver of car, abandoning three young children in the car and subjecting them to a "health endangering situation"). Moreover, as in *Loza v. Lynch,* 625 F.Supp. 850 (D.Conn.1986), the defendants had knowledge of Kavanaugh's psychological tendencies toward violence because of his testing and counseling, putting a further burden on them to protect this minor child from abuse.

In sum, there are specific allegations here that the police knew of the threat of harm to the plaintiff posed by Kavanaugh, and knew that he was a victim of child abuse, yet refused to act. Each of these factors contributes to the conclusion that a "special relationship" and a duty to protect may have existed here. Thus, the motion to dismiss must be denied at this stage of the analysis.

### 3. *Existence of an Official Policy or Custom*

To make out a Section 1983 claim against a municipal defendant and its officials, the plaintiff must also sufficiently plead the existence of a "policy or custom" which was the moving force of the constitutional deprivation. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2435–36, 85 L.Ed. 2d 791 (1985), *reh. denied,* the Supreme

Court cautioned that the existence of such a policy or custom should not be inferred from a single act of a lower level police officer, but should only be founded on evidence of wrong which can be fairly attributed to municipal policymakers.

A policy or custom, under the *Monell* doctrine, may be found either in the form of an official policy statement, or in the nature of "a persistent, widespread practice of city officials or employees ... so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). An official policy may be demonstrated by even a single act, however, where that act represents "a particular course of action made by [a municipality's] authorized decisionmakers." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). The complaint must set forth specific facts and not mere conclusory allegations of such a policy or custom. *Elliott v. Perez,* 751 F.2d 1472, 1479 and n. 20 (5th Cir.1985); *Strauss v. City of Chicago,* 760 F.2d 765, 767–68 (7th Cir.1985).

Defendants contend that plaintiff has failed to plead with the requisite specificity facts showing the existence of an official custom or policy behind his injury. Moreover, they contend that the plaintiff cannot base his allegations of a custom or policy on the facts of his case alone, but must point to some other, extraneous facts. *Rodgers v. Lincoln Towing Service,* 771 F.2d 194, 202 (7th Cir.1985). Indeed, the plaintiff has not pleaded any facts of an official custom or policy other than those relating to his own case. Nonetheless, the pleadings are sufficient to meet the burden required for a Section 1983 claim.

In the first place, Sherrell has not merely alleged he was harmed by the "isolated, intentional acts of [one] officer," *Rodgers,* 771 F.2d at 202, or by a "single isolated incident." *City of Oklahoma,* 105 S.Ct. at 2435. Rather, plaintiff contends he was injured by a series of decisions made by

various defendants, including the chief of police, *not* to arrest Kavanaugh even after they had received reports of his abusive behavior. Such reports occurred over a period of at least two months before the final assault on Jeremy.

Each such complaint against Kavanaugh should be viewed as a separate incident, as should each decision not to arrest him. *E.g., Thurman*, 595 F.Supp. at 1524–25. Together, this series of complaints to the police department, and the repeated refusal to arrest Kavanaugh, indicates a "deliberate indifference" or disregard by the defendants "sufficient at least to raise the inference of a policy on the part of the city." *Lowers*, 627 F.Supp. at 247. *See also Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986); *Loza*, 625 F.Supp. at 854. As in *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir.1985), *cert. denied* — U.S. ——, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987), conscious indifference to an officer's misbehavior, such as that alleged here, may reflect a deliberate police policy.

Moreover, as *Pembaur* holds, even *one* decision or act of an official policymaker may be sufficient to establish an official policy, where it represents a decision made pursuant to the policymaker's authorized, decisionmaking power. *Pembaur*, 106 S.Ct. at 1299, 1300. Whether a specific defendant is an official authorized to make final policy decisions for the municipality is a question of fact and of state law. *Id.* at 1301. The complaint names as defendants the chief and deputy chief of police of the City of Longview. There are no allegations concerning those officials' authority to render final policy decisions with respect to the police department's management of complaints and requests for protection of abused children. It is, however, within the realm of possibility that one or more of the named defendants may carry such authority. *E.g., Pembaur*, 106 S.Ct. at 1301; *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 875 & n. 6, 83 L.Ed.2d 878 (1985); *Love v. King*, 784 F.2d 708, 711 (5th Cir. 1986). The plaintiff cannot be expected at this stage of the litigation to have the knowledge necessary to fully allege the nature of such defendants' authority to act on behalf of the municipality, and he should be permitted discovery under the Federal Rules to flesh out such claims. *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985).

### 4. *"Moving Force" Allegation*

 Defendants further suggest that the plaintiff has not alleged sufficient facts showing that the policy or custom was the "moving force" behind his deprivation of rights. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. A mere causal link between the harm and a city policy is insufficient for the purpose of Section 1983. "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma*, 105 S.Ct. at 2436.

 Here, plaintiff has alleged the existence of a municipal policy or custom which protects police officers from complaints of domestic violence. By repeatedly shielding Kavanaugh from arrest and, presumably, from full investigation of his abusive behavior, the plaintiff contends that the custom or policy in fact permitted or encouraged Kavanaugh to continue in his child abuse. It is conceivable that it was reckless disregard on the part of the other police officers and the department not to act on the complaints about Kavanaugh. Even though plaintiff may not be able to prove as much at trial, he has nonetheless pleaded an "affirmative link" sufficient to withstand a motion to dismiss. *E.g., Grandstaff*, 767 F.2d at 170 (reckless disregard for public safety among police officers, attributable to example or acceptance by the city policymaker, is sufficient "affirmative link"); *Hinshaw*, 785 F.2d at 1263.

### 5. *Intentional Discrimination*

 Insofar as plaintiff complains of equal protection violations, defendants argue he must allege intentional discrimination and the absence of a rational basis for the complained-of acts. In *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.

2d 597 (1976), and *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), the U.S. Supreme Court established that purpose or intent to discriminate must be shown to make out a racial discrimination claim in violation of the equal protection clause. Moreover, the Court's discussion there, and in such later cases as *Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), indicates that discriminatory purpose or intent is generally required in all equal protection cases. To succeed in his equal protection claim, then, plaintiff must prove he was the victim of purposeful discrimination, either because of his membership in a protected class, such as a racial minority, or due to an irrational or arbitrary state classification unrelated to a legitimate state objective. *E.g., Stern v. Tarrant County Hospital District*, 778 F.2d 1052 (5th Cir.1985), *cert. denied* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986).

▮ Plaintiff contends that defendants improperly discriminate against persons who are the victims of police officers' domestic violence. The complaint alleges, for instance, that the City of Longview "condoned a pattern of practice" of affording inadequate or no protection to such victims, and that the practice is "well known" to individual officers in the police department, including the defendants. The defendants are further alleged to have acted in conformance with the practice.

These allegations do more than "raise suggestions" that the policy is intentional and unrelated to any legitimate state purpose. *See Johnson v. Pfeiffer*, 821 F.2d 1120, 1122 (5th Cir.1987). To allege the knowing tolerance and use of such a "pattern of practice" is to allege that it is purposeful or intentional; and to state that the policy protects officers against complaints of domestic violence implies that the purposes it serves are not legitimate. *Thurman*, 595 F.Supp. at 1527–28. To require plaintiff to spell out that the practice is "intentional" and "irrational" would serve no useful purpose here. Defendants are sufficiently on notice as to the plain-

tiff's specific allegations. Dismissal is therefore unwarranted.

6. *Negligent Deprivation of Civil Rights*

Recent Supreme Court decisions have clarified that a plaintiff may not bring a Section 1983 action for a due process deprivation based only upon the negligent acts of state officials. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), *overruling in part Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). *See also Love*, 784 F.2d at 712–13; Nahmod, *Civil Rights and Civil Liberties Litigation*, §§ 3.02, 3.09 (2d Ed.1986). Defendants thus request dismissal of plaintiff's causes of action for negligent deprivation of civil rights.

▮ As *Parratt* made clear (in a holding left undisturbed by *Daniels* and *Davidson* ), Section 1983 itself carries no state of mind requirement—rather, the state of mind element arises from the specific constitutional deprivations alleged. *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912–13; Nahmod, *supra*, at § 3.01. *Parratt* and *Daniels* establish that more than mere negligence is required for a due process violation; and as the discussion above indicates, intent to discriminate is required for an equal protection deprivation. Thus, defendants are correct in seeking dismissal of causes alleging negligent deprivation of due process and equal protection.

Both plaintiff and the defendants in their briefs agree that plaintiff has alleged negligent deprivation of civil rights. Plaintiff's fourth and fifth causes of action allege negligence, but such causes clearly arise solely under Texas law. The plaintiff's first three causes of action, which arise under the civil rights statutes, do not specifically allege negligent deprivation of civil rights. Negligent deprivation of civil rights may be inferred in those causes, however, and therefore, the motions to dismiss shall be granted to the extent that they allege negligent deprivation of civil rights under Section 1983. Since these claims also arguably allege *intentional*

deprivation of civil rights, however, as a practical matter none of the discrete causes of action are dismissed.

### 7. State Law Claims

Defendants assert that they are shielded by immunity from liability to plaintiff under his state law claims. Specifically, they contend that the only waiver of immunity for governmental functions under the Texas Tort Claim Act (TTCA), Tex.Rev.Civ. Stat.Ann. art. 6252–19 (Vern.Supp.1987), arises in relation to the operation of motor vehicles or equipment, or the condition or use of personal or real property, which are not present here. Moreover, defendants assert that the TTCA specifically protects their immunity from liability relating to a failure to provide, or the method of providing, police protection. Finally, defendants contend that they are also immunized from liability relating to any intentional tort under the TTCA.

■■■ Plaintiff fails to contest these claims. As far as the city is concerned, the argument that sovereign immunity has not been waived for the allegations raised in the complaint appears meritorious. As a subdivision of the state, the city is not liable for the torts of its employees in their execution of governmental functions, in the absence of statutory or constitutional provisions to the contrary. *State v. Terrell*, 588 S.W.2d 784 (Tex.1979). The only statutory waiver of sovereign immunity for tort claims against the State of Texas or its subdivisions is the TTCA. *Trinity River Authority v. Williams*, 689 S.W.2d 883 (Tex.1985). The complaint in its present form presents no facts that would fit into the limited waiver of immunity contained in the TTCA.

■■■ As to the individual defendants, they are not covered by sovereign immunity for negligent or intentional torts committed outside the scope of their employment. *Hein v. Harris County*, 557 S.W.2d 366, 368 (Tex.Civ.App.—Houston, 1977); *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex.Civ.App.—Houston, 1975). The complaint does not allege that the individual officers acted outside the scope of

their employment. Thus there is no basis to presume that the individual defendants are not shielded by sovereign immunity for their alleged acts. *Adams v. Myers*, 721 S.W.2d 447 (Tex.Civ.App.—Tyler, 1986).

Accordingly, the state law claims shall be dismissed as to all the moving defendants, without prejudice. Plaintiff may have thirty days to amend the complaint with respect to those causes.

### 8. Qualified Immunity

Finally, defendants alternately move for a more definite statement, contending that plaintiff has not sufficiently pled facts to overcome their qualified immunity to the civil rights causes of action.

■■■ Qualified immunity shields state officials from liability unless their conduct violates "clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Such immunity embraces immunity from suit, not just liability. *E.g., Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986). Qualified immunity, however, protects only individuals and not state agencies. *Lynch v. Cannatella*, 810 F.2d 1363, 1366, 1371–2 (5th Cir.1987).

■■■ "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1984). *See also Whatley v. Philo*, 817 F.2d 19 (5th Cir.1987); *Brown v. Texas A & M University*, 804 F.2d 327, 332–34 (5th Cir.1986). An individual officer-defendant is "entitled to know the nature and degree of injury [the] plaintiff allegedly suffered as a result of that officer's actions." *Lynch*, 810 F.2d at 1377. Requiring a more definite statement from the plaintiff is a proper vehicle for ascertaining whether the plaintiff can plead sufficient facts to overcome an official defendant's qualified immunity. *Elliott*, 751 F.2d at 1482 and n. 25; *Jacquez*, 801 F.2d at 792.

 As discussed above, plaintiff has pled with sufficient particularity the existence of a constitutional deprivation, the moving force of which was an official policy or custom. But the complaint is deficient in pleading facts sufficient to overcome a qualified immunity defense under the *Harlow* "objective" standard. *See Lynch,* 810 F.2d at 1374–75; *Brown,* 804 F.2d at 332–34. The motions for a more definite statement are therefore granted as to the individual officer-defendants, who may enjoy qualified immunity. But the motions are denied as to the city, which is not shielded by such immunity.

*Conclusion*

Plaintiff has sufficiently alleged, for the purposes of these motions to dismiss, constitutional deprivations relating to discrimination in the provision of police protection or breach of a special duty to protect him from Kavanaugh's attack. Plaintiff has also pleaded sufficient facts that the deprivations resulted from an official policy or custom of protecting Longview police officers from complaints of domestic violence. However, plaintiff has not adequately pled facts to overcome the individual defendants' asserted qualified immunity defense, and therefore must amend the complaint to provide a more definite statement in this regard.

The motions to dismiss are meritorious to the extent that plaintiff alleges negligent deprivation of civil rights, since there is no legal basis for such claims. In addition, the moving defendants appear to be immune from liability on the state law claims, necessitating dismissal of those causes of action as well.

Plaintiff will therefore be required to provide a more definite statement, within thirty days, under Rule 12(e). The amended complaint should address the issue of the individual defendants' qualified immunity. In addition, plaintiff may amend the complaint to clarify his allegations against the defendants under state law.

### ORDER

Based upon the conclusions of law expressed in the memorandum opinion entered this day in the above-entitled action, it is

ORDERED that defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6) shall be, and are hereby, GRANTED IN PART with respect to plaintiff's causes of action for negligent deprivation of civil rights. It is further

ORDERED that defendants' motions to dismiss shall be, and are hereby, conditionally GRANTED IN PART with respect to the state law causes of action. It is further

ORDERED that defendants' motions to dismiss shall be, and are hereby, DENIED IN PART in all other respects. It is further

ORDERED that defendants' motions for a more definite statement under Fed.R. Civ.P. 12(e) shall be, and are hereby, GRANTED. It is further

ORDERED that plaintiff shall have thirty days from the date of service of this order in which to amend the complaint and provide a more definite statement in conformance with the foregoing. It is further

ORDERED that should plaintiff fail to amend the complaint within said period of time as to the state law causes of action, this order of dismissal of such causes shall become final.